All right, our second case for this morning is Sabo v. Erickson, 21-3332. And we will hear first from Mr. Olson. May it please the court, I'm Jeff Olson. I'm here representing John Sabo. This circuit has adopted the deliberate indifference standard from the Third Circuit's opinion in Sample v. Dirks for Eighth Amendment excessive incarceration cases. That's the same standard that's used in corrections medical care cases and it's taken in Sample explicitly from those cases and especially from Estelle v. Gamble. And when you think about the fact that the standard comes from the medical care cases, it helps to answer a lot of the questions that arise in cases like this and in this appeal. For example, the medical care cases are useful in answering questions like, who has a constitutional duty not to be deliberately indifferent to the constitutional injury? Can I tell you something that bothers me about this case? Maybe this is as good a time as any to address it. When all is said and done, this central records office seems to take the legal position that they are not the ones empowered to fix an erroneous sentence, that the problem needs to be brought to the judge's attention. That's actually exactly what happens here. The judge fixes it. Mr. Sabo is out. There's a lot that's very disturbing to me about this case, including the attitude of Haley and Hicks when they figure out that they've been making a mistake in 2005 and apparently they do nothing all the way up until 2014 and so on. But where is the locus of responsibility here? And can we in fact hold them liable if they are not that locus of responsibility? Well, let's take the Hicks and Haley question separately from the Erickson and Hanson question. The Hicks and Haley question is, did they have a responsibility to take some reasonable action when they found out they'd been making an error and letting lots of unlawful sentences slip through their review? That's the 2005 time point. Yes. That's when they learned about their error in 2005 that was relevant to a time span involving 2004 when Sabo's case came through. Now, what they had been doing was just crossing off that erroneous term of probation on the judgment of conviction and writing in the proper one. And arguably, that was a proper thing for them to do given the very strong language of the automatic commutation statute section 973.09 sub 2m that says the sentence is commuted without further proceedings. But let's say that statute wasn't there or let's say for some reason they couldn't, they were acting in excess of their job authority when they did that crossing out and rewriting. But that statute actually was there from 2003 forward, right? Yes, it was. They still had a responsibility to do something reasonable about that error. And the something reasonable they had a responsibility to do, there's lots of things they could have done that no one could suggest was beyond their pay grade. And one of them is, for example, just sending out an email to the probation officers in the field that said, you know, if you're thinking of revoking somebody who was put on probation for a felony in 2004, take a look at that term of probation on the judgment of conviction. And if it's longer than the term of incarceration, refer that judgment back to our office for review so that can take a look at its legality. And if they had just done that, then these officers in the field would have been sending these judgments back for review. And in all likelihood, Mr. Szabo's judgment of conviction would have been fixed. But to your knowledge, did they have supervisors that they could have or should have notified? Or was there some supervisory structure who was obligated to order them to do something upon the discovery of their error? They had supervisors, but apparently, as far as the record is concerned, they didn't even tell their supervisors that they had discovered that they'd been conducting their reviews in an erroneous fashion. They could have consulted with their supervisors. They could have consulted with the Department of Corrections Office of Legal Counsel about what should we do about this. All these people that slipped through the cracks here and are now out there with erroneous terms of probation. Because a question Judge Wood asked you was if Hicks and Haley aren't to blame here, who might be? What's your answer? Well, the sentencing judge, of course, who is absolutely immune from liability. But that's the problem. That's where we run into this buzz of various types of immunity. Certainly for the sentencing judge, it's an absolute judicial immunity. You're not going to sue that person. If it is other people in the chain and the argument is made, we're really sorry this is happening, but there's a process for fixing it and we just have to unlawful that you would deny qualified immunity for these people. Oh, I think so and I think it helps to look at the medical care cases. Hicks and Haley were two people and their job was to fix these constitutional injuries when they came before them for review, these unlawfully long sentences. And what if they had been a doctor and their job had been to fix broken legs? Of course, if somebody comes before them with a broken leg and they are deliberately indifferent and do nothing, they're going to be liable. Well, Hicks and Haley had the same job, except it wasn't to fix a broken leg, it was to fix a broken sentence. And if they do nothing, they're liable because it's their job. Sample versus Dirks and Judge Griesbach in the Watford case looked at it a little differently and said they're liable if they see a constitutional injury and they realize that if they don't do something about it, likely nobody else is going to do anything about it. Well, that's where you get both the subjective and the objective dimensions to this. It seems that by 2005, they subjectively know that they've been doing this the wrong way and it's objectively, arguably unreasonable to persist in the wrong approach. Yes. And, you know, applying the medical analogy to Erickson and Hanson, when they realize that they've put Mr. Sabo in jail on a probation hold pending revocation when he wasn't even legally on probation in the first place, the standard that applies to them, I think, is if they cause the constitutional injury and they have the power and authority to fix it, then just like a medical person would, they have the obligation not to be deliberately indifferent. But they do figure, Erickson and Hanson, or Erickson at least, drops the probation hold instantly as soon as the state court fixes the sentence. But not as soon as she knew it was unlawful. But does she have, this gets me back to my other question, I guess I'll just have to figure it out, does she have the power to disregard what the state court has said? No. Let's say she doesn't. I think she does under the statute 97309. The automatic reduction. The automatic commutation statute, I think she has that power. But even if she doesn't, the judgment of conviction doesn't require her to commence a revocation or to continue a revocation proceeding, and it certainly doesn't require her to continue that probation hold. She can let Mr. Sabo out of jail as soon as she learns that he is unlawfully incustomed. Your contingent is that the jail part was optional. That was within her discretion. That is correct. She decided he should stay in jail while these revocation proceedings were underway. But tell me more about Hanson. The record's pretty scant on Hanson. Her. It's Barbara Hanson. She's a supervisor two levels up. There's some evidence that she participated in these decisions relating to starting the revocation proceeding and deciding to incarcerate Mr. Sabo pending revocation. The record is somewhat unclear about the extent to which Hanson participated. Well, I guess participated in the non-decision to do anything about Mr. Sabo's unlawful incarceration when Erickson was informed by the defense lawyer and then by the central records unit through the email that the defense lawyer was right, and Sabo's probation term had expired the previous summer. But Hanson was in on those emails and knew about it, and you can see if you look at the emails, and I think it's probably covered in our proposed findings of fact as to was in on those emails. So Hanson had knowledge, as did Erickson, that Mr. Sabo was unlawfully in custody. I take it the state has never argued that he was lawfully in custody. That's correct. One last point, and I'll save my time for rebuttal. There's an attractive argument on the defense side that Erickson and Hanson were not deliberately indifferent because they did something. They suggested to the defense lawyer that they contact the judge, and they acknowledged that the sentence was unlawful. So they did something, but they were deliberately indifferent to the continued incarceration of Mr. Sabo during that time period. Between the time they knew for sure that he was unlawfully in jail and the time that the judge acted to amend the judgment of conviction, and that was 20 days. Did they know for sure, or did they have an email from Ms. Herring saying the defense lawyer appears to be correct on this one? He appears to be over serving his term of incarceration. This has to go to the judge for a final determination. I think the fair way of reading that email is there is no doubt that this is an unlawful sentence because it's a matter of black letter law. The term of probation can't exceed the term of incarceration for a felony. Estelle v. Gamble, going back to the medical lawyer cases again, creates liability either where corrective action is intentionally denied or delayed. And here it was delayed for 20 days when it didn't have to be. Thank you. Thank you, Mr. Olson. Mr. Patterson. Thank you, your honors. May it please the court, Beauregard Patterson for the appellee Sherry Hicks, Debra Haley, Sherry Erickson, and Barb Hanson. I would like to begin by addressing Mr. Olson's last point. With regard to the email that Ms. Erickson had received from Ms. Herring, specifically it did in fact say that it appears that the defense, that Mr. Szabo's defense counsel may be right on this one. And I quote, in the email, Ms. Herring told Ms. Erickson that if the court disregards the letter, the letter being the letter they would send informing the court that the sentencing, the probation sentence appeared to be unlawful or takes no action, we have to leave it at five years. Meaning that... How is that consistent with the Wisconsin statute? I don't know how this poor legislature could have written a more clear statute saying if it's too much, it just goes away by operation of law. Well, your honor, in terms of the understanding of Ms. Erickson and Ms. Hanson, that was built upon their discussions with the Central Records Office and the legal counsel within the Department of Corrections. And it has been the understanding based on a body Wisconsin case law that we cited in our response brief that in fact, in order to amend a sentence or to release someone, to commute someone's sentence, you have to go to the court. There is no... But that was not always the practice. This was a late in the day practice. This is outrageous. It reminds me of various Eighth Amendment cases from the Bureau of Prisons where somebody's release date has been miscalculated or something. You're allowed to be out of prison once you've served your term. And if you have an unlawfully long sentence, you're allowed to have that redressed. Why isn't that what this case is all about? Your honor, I think that what separates this case from those cases is the fact that the error in this circumstance lies with the sentencing judge. It does not lie with a sentencing miscalculation that is a result of the Department of... Of these employees from the Department of Corrections. And in fact, I think that it's important to focus on that the cause of Mr. Olson's release is that the sentencing judge issued a sentence that was beyond the term allowed by Wisconsin statute. I take your point very clearly, but we have a couple of other things going on here. One, could you please address Mr. Olson's point that there's still a discretionary part of this puzzle where Erickson and Hanson could decide that Mr. Saba was going to stay in jail pending his revocation proceedings. So then when they get a hint that he's in there for no good reason because his sentence has been calculated incorrectly, their discretion was not cabined at that moment. They certainly couldn't amend the actual order itself and shorten his sentence on their own, but it was within their discretion about whether he was in jail pending this entire thing to begin with. What's your answer to that? Absolutely, Your Honor. I believe this goes to the subjective component of deliberate indifference and that we have to remember that Erickson in particular is a probation officer. She is not an attorney. She's not trained or versed in the law. And upon learning about the potential issue with Mr. Saba's sentence, she consulted higher up individuals within the Department of Corrections who would be able to answer and fill the knowledge gap that she had. And as a result, the email that she got from Ms. Ehring indicated to her that it was her duty to continue to enforce the sentence until the judgment was amended. Okay, that's a very reasonable answer. I accept that. While we're talking about consultation, let's flip back to Hicks and Haley. What was their duty of consultation in 2005? This is the same question asked of Mr. Olson. When they learned they had been doing everything wrong and calculated these 2003 to 2005 defendants incorrectly, what was their obligation at that time? In the case of Hicks and Haley, I think that the appellant has misconstrued the level of responsibility that the Records Office has in the process of amending the sentences of defendants. The Central Records Office catalogs sentences in order for the Department of Corrections to know what individual sentences are for each person who's incarcerated. And at the time in 2004 to 2005, in addition to reviewing so that way there was a catalog of each incarcerated person's sentence, if they detected an error, they would make a note of that and they would not amend the sentence on their own. They would in fact contact the court and the court would change the judgment. When you say contact the court, is there some formal petition that gets filed? They would write a letter to the court. I mean there is no formal process and I think that's one of the things... Did they write a letter to the court saying, we just found out between 1,000 and 1,500 sentences in 2004-2005 may have been calculated incorrectly? Well, no, because they didn't know that. I mean, what they knew is that they had been operating under the wrong... When reviewing the sentences, they were operating under the wrong understanding of the length of term for probation sentences. But that is not what their role in reviewing sentences was. And so they certainly changed their conduct moving forward, but they did not indicate to anyone that they had failed in this duty because they had no duty. Well, then this brings me to... I'm sorry. No, I was just going to say, I'm thinking of high end against North Carolina. Was this an objectively reasonable way to read the Wisconsin law? Because it certainly doesn't seem that way to me. Well, the Wisconsin law doesn't create a prescriptive duty. It simply says that if... The whole original mistake, three years versus longer, that everybody says, oops, we've been changing our sentencing procedures around. Sorry, buddy, you're spending an extra couple of years in prison. I mean, people don't like that, right? It's pretty serious. Absolutely. And the issue, and I bring this back to the fact that the statute itself says that a sentence, a probation sentence, which is an excess to that which is allowed by law, this is paraphrasing, is essentially commuted. But it does not say who commutes the sentence. It does not create a prescriptive duty on individuals in the Department of Corrections to commute the sentence. And most importantly, I think that this goes to the knowledge element of deliberate indifference. But Mr. Olson is not saying that they should have commuted Mr. Szabo's sentence. He's saying they did nothing. They didn't email the probation officers. They didn't alert their supervisors. They didn't send a courtesy letter to the court saying, we discovered this error. We're not sure of the magnitude. We have no way of knowing. But there may be something here. Well, again, the reason why the records defendants, Hicks and Haley, reviewed these sentences, their primary purpose was not to help the court to correct its own errors. And I think that that is an important thing that needs to be focused on, is that not only did the court commit an error, but also Mr. Szabo's defense counsel also erred. Mr. Szabo's defense counsel, instead of zealously advocating for him and objecting to a presumptively unlawful sentence, probation sentence, during the sentencing hearing, accepted that sentence. And as a consequence, Mr. Szabo resulted in having a sentence that was two years too long for probation. That is a process that was independent of Hicks and Haley, and they had no duty under law. And in fact, in the complaint and in the briefing, Mr. Szabo points to no duty in law, that the Department of Corrections review sentences and make the court aware when they discover an error. He points to no case law in Wisconsin or in our federal circuit that indicates that. And as a result, the district court found that no duty exists. But there is a duty in a way. I mean, again, I get back to these basic Eighth Amendment cases. There is a responsibility not to keep somebody incarcerated who is no longer serving a valid sentence. Absolutely. But I believe this goes again to the knowledge element. Hicks and Haley did not know that Mr. Szabo was facing a risk of a constitutional violation. So this is the empty brain defense. The simple fact is that of the 41,600 upwards of 41,600 sentences that were reviewed in that time period, 1,000 to 1,500 sentences may have had errors. Now, it is important to note, not all of those sentences that have errors necessarily have probation sentence errors. We're talking about errors, period. And so it is unknown if you were to draw any single one of those judgments from that stack. You're talking about 2% to 3% chance that there may be an error. And that 2% to 3% chance does not mean probation sentence error necessarily. 2% to 3% chance of risk is almost no risk. And they had no specific knowledge of Szabo. Now, it is true that in many of the deliberate indifference cases, the official knows of a specific risk to a specific defendant. But there are many cases where that's not true. And we've said that a general knowledge of a risk is sufficient and needs to be upheld here. So here, Hicks and Haley by 2005 had something specific. It wasn't Szabo individually, but they knew they had been making probation errors in the 04-05 period for people who should have been serving three years, not five years. So that's a little more to turn on that point to the issue of qualified immunity. Because another issue in response to that, I would say that even if there potentially was a duty that they had based upon this circuit in an unpublished decision involving these same two defendants, Peralt v. Wisconsin Department of Corrections, which was cited quite a bit in the briefing. But Peralt was different. Peralt only alleged that the officials knew that there could be unlawful sentences generally. That was the allegation there. Here, there's a specific time period affecting these particular types of probation defendants. In terms of, I take Peralt, though, to take the notion that this court rejects deliberate indifference cases that are framed in the concept of negligence. And one of the things that Mr. Szabo has done is that he, in his complaint, he actually does not specifically discuss there being a duty that Hicks and Haley failed to perform under the law. He discusses that in paragraphs 421 and 422, that they owed a duty of care to all persons whose sentences they had been analyzing judgments of conviction incorrectly. They owed a duty of care to take steps to review the unlawful judgments of conviction and correct the illegalities. And he does not specify in his pleadings that there is, in fact, some sort of legal duty that exists here. And without that, I do not think that the court should find deliberate indifference. Unless there are any other questions? I see none, so thank you very much, Mr. Patterson. Anything further, Mr. Olson? Mr. Patterson made a couple of mistakes on the facts. He told you that in 2004 and 5, Hicks and Haley weren't fixing the judgments of conviction. They were contacting the courts. Well, that's not what we alleged. The First Amendment complaint is in the separate appendix, and on page, separate appendix 69, at paragraphs 411 and 412, we say if Hicks and Haley encountered an unlawfully long term of probation on a judgment of conviction, it was their job to correct that judgment of conviction so that the term of probation was lawful. And we then don't go on to describe how they did it with their own little pen and pencil and cross out the excessive term and write in the proper term. And then they'd make two copies, and they'd send a copy as a courtesy, not to the court, but to the probation agent, and it was the probation agent's job as a courtesy to send the corrected judgment along to the court. The opposing counsel said that the errors that we were talking about when we were talking about errors per week or per time period that Hicks and Haley had to correct were not just probation errors, it was all errors. Well, in the same paragraphs, beginning at 411 of the First Amendment complaint, we started off talking about if Ms. Haley and or Ms. Hicks encountered an unlawfully long term of probation on a judgment of the conviction. And then we talked about what they did with those unlawfully long terms of probation for several paragraphs. And then in paragraph 416, we said, in 2004, approximately five or six judgments of conviction needed to be corrected in this way each day. And it was all talking about unlawfully long terms of probation. I don't know that either of those errors makes a position of the case, but they shouldn't creep into the opinion. All right. Thank you, Mr. Olson. Thank you. Thanks to both counsel. The court will take the case under advisement.